AO 91 (rev.11/11) Criminal Complaint       AUTHORIZED AND APPROVED DATE: _K RHM 1/7/2021_

# United States District Court
## for the

__WESTERN__ DISTRICT OF __OKLAHOMA__

| | |
|---|---|
| United States of America ) | |
| v. ) | Case No: M-21- 004-STE |
| THOMAS WILLIAM REINBOLD, ) | |

FILED

1:23 pm, Jan 07, 2021
CARMELITA REEDER SHINN, CLERK
U.S. DIST. COURT, WESTERN DIST. OKLA
By: Andrea Caster, Deputy Clerk

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

From in or about June 2020 through in or about September 2020, in the Western District of Oklahoma, the defendant violated:

| Code Section | Offense Description |
|---|---|
| Title 21, U.S.C., Section 846 | Conspiracy to possess with intent to distribute and to distribute five hundred (500) grams or more of a mixture or substance containing a detectable amount of methamphetamine. |

This criminal complaint is based on these facts:

See attached Affidavit of Special Agent Matthew Wyckoff, DEA which is incorporated and made a part hereof by reference.

☒ Continued on the attached sheet.

_____
Complainant's signature
MATTHEW WYCKOFF
SPECIAL AGENT
DRUG ENFORCEMENT AGENCY

Sworn to before me and signed in my presence.

Date: __Jan 7, 2021__

City and State: Lawton, OK

_Shon T. Erwin_
Judge's signature

SHON T ERWIN, U.S. Magistrate Judge
Printed name and title

WESTERN DISTRICT OF OKLAHOMA
OKLAHOMA CITY, OKLAHOMA

STATE OF OKLAHOMA   )
                    )
COUNTY OF OKLAHOMA  )

## AFFIDAVIT

I, Matthew Wyckoff, being duly sworn, depose and state the following:

## INTRODUCTION

1. I am a Special Agent (SA) of the Drug Enforcement Administration (DEA), United States Department of Justice since August 2010. As a SA, I am an investigative law enforcement officer of the United States of America within the meaning of 21 U.S.C. § 878, that is, an officer of the United States who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in 21 U.S.C. § 878. I have specific training and experience in numerous methods of investigation, including, but not limited to, electronic and visual surveillance, general questioning of witnesses, the use of search warrants, the use of confidential sources/informants, the use of pen registers, and the use of undercover agents. Based on my training and experience relating to the investigation of drug traffickers, and based upon interviews I have conducted with other officers, defendants,

informants, and other witnesses and participants in drug trafficking activity, I am familiar with the ways that drug traffickers conduct their business. My familiarity includes the various means and methods by which drug traffickers import and distribute drugs, their use of cellular telephones, their use of vehicles, and their use of numerical codes and code words to conduct drug transactions. I am also familiar with the ways that drug traffickers conceal, convert, transmit and transport their drug proceeds, including, but not limited to, the use of couriers and vehicles to transport currency and proceeds, and the use of third parties to purchase or hold title to assets.

2. I am familiar with the facts and circumstances of this investigation as a result of my personal participation in the investigation referred to in this affidavit and information summarized in reports I have reviewed. I have compiled information derived from numerous discussions with experienced law enforcement officers, including SAs of the DEA and other State and Local law enforcement officers.

3. Based upon the following facts, I believe that probable cause exists to show that **Thomas William REINBOLD** (DOB 02-17-1975, SSN 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) and others, conspired to possess with intent to distribute and distribute five hundred (500) grams of more of a mixture

or substance containing a detectable amount of methamphetamine, in violation of 21 U.S.C. § 846. Since this affidavit is being submitted for the limited purpose of establishing probable cause, I have not included each and every known fact regarding the instant investigation.

## PROBABLE CAUSE

4. In June 2020, agents/officers obtained information that Vernon STRICKLER was distributing methamphetamine in the Oklahoma City area.

5. July 20, 2020, agents/officers orchestrated a controlled purchase of 261.8 gross grams of suspected methamphetamine, to include packaging, from STRICKLER and his source of supply in front of residence located at 2909 SE 56th Street, Oklahoma City, Oklahoma. Prior to the purchase, a confidential source (CS) made recorded call(s) to STRICKLER to arrange the methamphetamine transaction. Surveillance during this purchase observed a black GMC Yukon arrive at STRICKLER's residence occupied by a white male. This white male, entered the CS's vehicle, which was already occupied by the CS and STRICKLER. The white male supplied the CS with the suspected methamphetamine and the CS gave the money for the suspected methamphetamine to STRICKLER. STRICKLER kept some of the money and gave some of the money to the white male. Following the

completion of the purchase, surveillance observed the GMC Yukon travel to a residence located at 1103 Kouba Dr., Yukon, Oklahoma. Utility records were requested on that residence and Wesley PIKE was confirmed to be the account holder for utilities at 1103 Kouba Dr. Toll analysis was completed on STRICKLER's cellular phone, which showed STRICKLER contacted a phone registered to PIKE after talking to the CS. Shortly after arriving at 1103 Kouba Dr., surveillance observed the GMC Yukon leave the residence and travel to 508 Queensboro Place, Yukon, Oklahoma. The GMC pulled into the driveway at 508 Queensboro briefly where a white male entered the GMC. After the brief stop, the GMC Yukon returned to 1103 Kouba Dr. Utilities at 508 Queensboro Place are in the name Jamie Frejo. Subsequently, agents/officers learned that Frejo lived at the residence with Thomas William REINBOLD. I believe PIKE gave REINBOLD the drug proceeds when he went to 508 Queensboro Place. The suspected methamphetamine was subsequently field tested and was presumptive positive for methamphetamine. The CS was searched for illegal drugs before and after the transaction with negative results.

     6. August 12, 2020, agents/officers conducted a controlled purchase of 260.7 gross grams, to include packaging, of suspected methamphetamine from PIKE. The CS called STRICKLER to arrange

the methamphetamine purchase to occur with a different CS. STRICKLER agreed to the transaction. The calls on August 12, 2020, between the CS and STRICKLER were not recorded. Prior to the purchase, surveillance was established at 2909 SE 56th Street, Oklahoma City, Oklahoma (STRICKLER's residence) and 1103 Kouba Dr., Yukon, Oklahoma (PIKE's residence). Surveillance units observed PIKE and an unidentified female leave 1103 Kouba Dr. in a red Chevy Camaro. Prior to PIKE leaving the residence, agents/officers observed PIKE carrying a small black bag out of the residence and into the Camaro. Surveillance was maintained on PIKE and agents/officers observed PIKE arrive at 2909 SE 56th Street (STRICKLER's residence). Shortly thereafter, surveillance observed PIKE leave STRICKLER's residence and travel to the meet location to complete the transaction with the CS. During the transaction, PIKE retrieved the suspected methamphetamine from a small black bag that appeared to be the same bag PIKE had taken from 1103 Kouba Dr., and distributed it to the CS. Following the completed transaction, PIKE was observed returning to 2909 SE 56th Street (STRICKLER's residence), where he stayed for a short time. After departing STRICKLER's residence, PIKE returned to 1103 Kouba Dr. (PIKE's Residence). About 25 minutes later, surveillance observed REINBOLD arrive at PIKE's residence and

walk the front door. About 5 minutes later, surveillance observed REINBOLD leave PIKE's residence and travel to 508 Queensboro Place. I believe PIKE gave REINBOLD the drug proceeds at 1103 Kouba Dr. The suspected methamphetamine was subsequently field tested and was presumptive positive for methamphetamine. The CS was searched for illegal drugs before and after the transaction with negative results.

7. PIKE and REINBOLD were seen together on multiple occasions during surveillance.

8. On September 8, 2020, agents/officers executed search warrants at 1103 Kouba Dr., and 508 Queensboro Place. REINBOLD left the residence at 508 Queensboro Place prior to the execution of the search warrant. Jamie Frejo was present at 508 Queensboro Place when the warrant was executed. Frejo was subsequently interviewed several times, and provided the following information: Frejo was the girlfriend of REINBOLD. REINBOLD told Frejo that an individual named "Chaos" (later identified as Joshua KETCHERSIDE) hired him and subsequently, REINBOLD hired PIKE. "Chaos" paid REINBOLD $1,000.00 per week. Frejo observed REINBOLD in possession of two or three guns at the residence. Also, Frejo saw REINBOLD with a large amount of U.S. currency in a shrink wrap bag on one occasion. On a

separate occasion, Frejo saw a large amount of money with a rubber band around it in REINBOLD's dresser drawer. REINBOLD supplied Frejo with user amounts of methamphetamine on a daily basis for approximately 2 months.

9. Shortly after the warrant was executed at her residence, an individual came to Frejo's residence asking if REINBOLD was home. Frejo said he was not, so the individual gave a green lighter to Frejo for REINBOLD. The green lighter symbolized a "Green Light" being placed on REINBOLD.

10. PIKE was arrested on September 8, 2020, for federal drug conspiracy charges. PIKE was subsequently interviewed several times and provided the following information. PIKE met REINBOLD in a halfway house prior to being released from prison. When PIKE was released from prison, he told REINBOLD that he needed money and REINBOLD introduced PIKE to Joshua KETCHERSIDE, AKA "Chaos" as a person who could help PIKE make money. PIKE began working for KETCHERSIDE in late June or early July, 2020 until the end of August 2020. PIKE talked to KETCHERSIDE via FaceTime on multiple occasions, so he knew who KETCHERSIDE was. PIKE and REINBOLD worked together and sold approximately 1-2 kilograms of methamphetamine per week during this time frame. KETCHERSIDE

7

instructed PIKE and REINBOLD where to go and who to meet to pick up the methamphetamine. Sometimes PIKE and REINBOLD picked up the methamphetamine together, and sometimes PIKE or REINBOLD picked up the methamphetamine separately. PIKE stored the methamphetamine at his residence and REINBOLD was in charge of the money. REINBOLD was paid $1,000 per week by KETCHERSIDE and PIKE was paid $1,000 per kilo that PIKE sold for KETCHERSIDE. KETCHERSIDE also paid $650 for partial rent payment to PIKE.

11. Gradually, REINBOLD became in debt with KETCHERSIDE. KETCHERSIDE directed PIKE to go to REINBOLD's house and get the guns, money, and stored value cards that REINBOLD was holding for KETCHERSIDE.

12. On August 30, 2020, PIKE was stopped by Newcastle PD on August 30, 2020, with two guns and some methamphetamine. The .45 caliber pistol that was seized by Newcastle PD is one of the guns that PIKE seized from REINBOLD.

13. Following the Newcastle PD stop, KETCHERSIDE sent people to PIKE's residence. They took some marijuana, and the guns PIKE had taken from REINBOLD. KETCHERSIDE told PIKE the debt was now settled, but REINBOLD was fired. KETCHERSIDE and

several other members of the Universal Aryan Brotherhood (UAB) subsequently approved a "Green Light" on REINBOLD because REINBOLD knew too much about the drug trafficking activities of UAB members. KETCHERSIDE told PIKE to kill REINBOLD to redeem himself.

14.   PIKE provided telephone number 405-894-4398 as a number utilized by KETCHERSIDE. Per phone toll analysis, for the time from August 14, 2020 to September 3, 2020, REINBOLD was KETCHERSIDE's second top caller and PIKE was KETCHERSIDE's fourth top caller.

## CONCLUSION

15. Based on these facts, I believe that probable cause exists to show that **Thomas William REINBOLD** and others conspired to possess with intent to distribute and distribute five hundred (500) grams or more of a mixture or substance containing a detectable amount of methamphetamine, in violation of 21 U.S.C. § 846.

MATTHEW WYCKOFF
Special Agent
Drug Enforcement Administration

SWORN AND SUBSCRIBED to before me on this 7+h day of January, 2021.

SHON T. ERWIN
United States Magistrate Judge